UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FOURTEEN CORPORATION, an
Ohio corporation,

    Plaintiff,

vs.                                                                                          Case No. 13-11803

MICHAEL MAGNOLI, Jr., an individual,                           HON. AVERN COHN
and MICHAELANGELO CONSTRUCTION
COMPANY, a Michigan corporation,

    Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Doc. 8)
## AND
## DENYING DEFENDANTS' MOTION FOR ABSTENTION OR STAY THE CASE (Doc. 13)

### I. Introduction

This is an action to enforce guaranty obligations in a bank loan and mortgage. As will be explained, the loan transaction at issue has resulted in cases in state, federal, and bankruptcy court. In this case, plaintiff Fourteen Corporation (Fourteen), the holder by assignment, is suing defendants Michael Magnoli Jr. (Magnoli) and Michaelangelo Construction Company (MCC) to enforce a separate guaranty obligations relating to the Villages of Capital Pointe, LLC (Villages), who defaulted on a $8,000,000 loan originally issued by Fidelity Bank and later assigned to Huntington National Bank (Huntington). Magnoli is the member of Villages and president of MCC.

Before the Court is Fourteen's motion for summary judgment, seeking judgment that Magnoli and MCC are liable on the guaranty. While Fourteen has set forth the amount it says is owing, it is not seeking summary judgment on damages.

Also before the Court is defendants' motion for abstention or stay the case. Defendants ask the Court to stay this action pending resolution of a separate action Villages initiated in state court against Huntington.

For the reasons that follow, defendants' motion to stay will be denied and Fourteen's motion for summary judgment will be granted.

## II. Background

### A. The Loan

On October 30, 2007, Villages obtained an $8,000,000 loan from Fidelity in connection with a real estate development in Washington Township which consists of a commercial building and 48 residential units. The loan is evidenced in a promissory note signed by Villages. The maturity date under the note was January 1, 2013.

As security for the loan, Villages granted Fidelity a Future Advanced Mortgage (mortgage) on the property. The mortgage contains a provision, found in section 14, in which Villages assigned its "right, title and interest in and to any and all rents, issues and profits . . . that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property." Section 14 also states that the assignment of rests applies "only if this Mortgage secures commercial or industrial property other than an apartment building with less than six apartments or any family residence."

Villages also, on October 30, 2007, executed a Construction Loan Agreement which contained additional terms and conditions relative to the loan.

Also on October 30, 2007, each defendant executed a guaranty in which they "unconditionally" guaranteed payment of Villages' indebtedness to Fidelity when due. In each guaranty, a defendant agreed to

> waive any and all defenses, claims and discharges of [Villages] or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full

In each guaranty, each defendant further agreed that it would

> not assert, plead or enforce against [Fidelity] any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to [Villages] or any other person liable in respect of any Indebtedness, or any setoff available against [Fidelity] to [Villages] or any such other person, whether or note on account of a related transaction.

In 2012, Fidelity was closed by the Michigan Office of Financial Regulation. The FDIC was then appointed receiver of Fidelity. The FDIC, as receiver, then entered into a Purchase and Assumption Agreement with Huntington, under which it sold Fidelity's rights to the loan at issue to Huntington. Huntington later assigned its interest in the loan to Fourteen, a wholly-owned subsidiary of Huntington. The assignment of the mortgage was recorded. The record contains, inter alia, a copy of the note, Magnoli's and MCC's guaranties, the assignment of Fidelity's interest in the mortgage from the FDIC to Huntington and other related assignment documents, a notice of Villages' default, a notice of the assignments of rents, and a document showing Fourteen is a subsidiary of Huntington

### B. Demands for Payment

On January 11, 2013, counsel for Fourteen and Huntington sent a demand letter to Villages and defendants, stating the loan was in default for failing to pay on the note

upon maturity. Fourteen demanded payment in full from Villages and defendants.

Shortly thereafter, Huntington attempted to collect rents from the property in accordance with the mortgage, evidenced by its filing of a Notice of Exercise of Assignments of Rents on April 11, 2013.

### C.  The Lawsuits

On April 12, 2013, before Huntington collected any rents, Villages sued Huntington in Macomb County Circuit Court, challenging Huntington's ability to collect rents under the assignment of rents provision. Villages asserts that the property actually contains 48 family residential condominiums which are not subject to the assignment of rents provision. The complaint asserts the following claims: (1) breach of contract, (2) conversion, (3) tortious interference with a contract, and (4) injunctive relief.

Villages also moved for a TRO preventing the assignment of rents. The state court entered a TRO on April 12, 2013. A hearing on the TRO was set for April 25, 2013.

Meanwhile, on April 22, 2013, Fourteen filed this case against defendants. The complaint makes a single claim for breach of the guaranties.

On April 25, 2013, the date for the TRO hearing, Villages filed a petition for bankruptcy under Chapter 11. In re Villages, case no. 13-48429.

On June 11, 2013, Fourteen filed for summary judgment in this case.

On June 12, 2013, Huntington removed the state court case to the bankruptcy court as an adversary proceeding. Villages v. Huntington, Adv. P. No. 13-4679.

On June 26, 2013, Villages filed a motion to abstain and remand the adversary proceeding to state court. Huntington opposed the motion.

On July 12, 2013, Villages filed a motion to withdraw the reference in the adversary proceeding.

Also on July 12, 2013, defendants filed a motion for abstention or to stay this case pending resolution of Villages v. Huntington.

On July 31, 2013, the bankruptcy court adjourned a hearing on the motion to abstain or remand the adversary proceeding pending resolution of Villages's motion to withdraw the reference.

On August 5, 2013, the motion to withdraw the reference was opened in this district as Villages v. Huntington, case no. 13-13334. It was later reassigned to the undersigned as a companion to this case.

On August 21, 2013, the Court held a hearing on the pending motions in this case and a status conference with the parties in Villages v. Huntington. After the status conference, the Court entered an order granting Huntington's motion to withdraw the reference, thereby placing Villages v. Huntington squarely on the Court's docket.[1]

### III. Analysis

#### A. Motion for Abstention or Stay

##### 1. Legal Standards

Defendants invoke the abstention doctrine in Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976). In Colorado River, the Supreme Court held that in "exceptional" circumstances, a federal district court may stay or dismiss an action solely because of the pendency of similar litigation in state court. Id. at 818. The

---

[1]The Court has entered an order denying Villages' motion to abstain or remand.

Supreme Court held that "considerations of 'wise judicial administration, giving regard to conservation of judicial resources' " created a narrow exception to the "virtually unflagging obligation of the federal courts to exercise the jurisdiction given them." Id. at 817. The principles underlying this doctrine "rest on considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'" Id. In this circuit, a court applying Colorado River must stay, not dismiss, the case. See Bates v. Van Buren Twp., 122 Fed. Appx. 803, 809 (6th Cir. 2004)

Before the Colorado River doctrine can be applied, the Court must first determine that the concurrent state and federal actions are actually parallel. See Crawley v. Hamilton County Comm'rs, 744 F.2d 28 (6th Cir. 1984). "[E]xact parallelism" is not required: [i]t is enough if the two proceedings are substantially similar." Nakash v. Marciano, 882 F.2d 1411, 1416 (9th Cir. 1989). Once a court has determined there are parallel proceedings, the Supreme Court identified eight factors that a district court must consider when deciding whether to abstain from exercising its jurisdiction due to the concurrent jurisdiction of state court. PaineWebber, Inc. v. Cohen, 276 F.3d 197, 206 (6th Cir.2001). Those factors are:

> (1) whether the state court has assumed jurisdiction over any res or property; (2) whether the federal forum is less convenient to the parties; (3) avoidance of piecemeal litigation; (4) the order in which jurisdiction was obtained; (5) whether the source of governing law is state or federal; (6) the adequacy of the state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; and (8) the presence or absence of concurrent jurisdiction.

Id.

### 2. Application

As Fourteen points out, defendants' request is flawed because there is no

parallel state court proceeding. Villages v. Huntington was filed in state court, but it is not a state court case; it is a case in this district, pending before the undersigned. Thus, Colorado River does not apply. See Gottfried v. Medical Planning, 142 F.3d 326, 329 (6th Cir. 1998) (finding Colorado River abstention inappropriate because "where there is no presently ongoing state proceeding parallel to the federal case, the exceptional circumstances necessary for Colorado River abstention do not exist).

Additionally, Villages v. Huntington does not involve the same issue. While the parties are related inasmuch as Villages is owned and/or controlled by defendants here, the claim in this case is to enforce the guaranties executed by defendants. In Villages v Huntington, the issue is whether the assignments of rents provision applies under the circumstances. As explained below, defendants have waived any right they may have individually to challenge Huntington's actions. Put simply, there is no basis to abstain or stay this action.

### B. Fourteen's Motion for Summary Judgment

### A. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by 'showing'-that is, pointing out to the district court-that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Revised Rule 56 expressly provides that:

A party asserting that a fact cannot be or is genuinely disputed must support the

assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support a fact.

Fed. R. Civ. P. 56(c)(1).[2]

The revised Rule also provides the consequences of failing to properly support or address a fact:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:

(1) give an opportunity to properly support or address the fact;

(2) consider the fact undisputed for purposes of the motion;

(3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it; or

(4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do

---

[2]Plaintiff argues that documents attached to defendant's motion cannot be considered because they are not properly authenticated and or are otherwise inadmissible. Plaintiff is mistaken. The documents attached as exhibits consist of (1) documents attached as exhibits to plaintiff's complaint, (2) documents recorded with the Livingston County Register of Deeds, (3) copies of documents filed in plaintiff's Bankruptcy proceeding, and (4) a copy a transcript from plaintiff's deposition. All of these documents are properly considered on a motion for summary judgment; indeed, some may be considered on a motion to dismiss.

8

more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, id. at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party, Hager v. Pike Cnty. Bd. of Ed., 286 F.3d 366, 370 (6th Cir. 2002).

### B. Application

Fourteen relies on the language of the guaranties to argue that they unambiguously provide that defendants are liable for Villages default and they have waived any defenses to enforcement.

In response, defendants argue that they need discovery as to the "chain of title" and damages. They also take issue with the Declaration of Matthew Wilk, a Vice President of Huntington and a Vice President of Fourteen. They also suggest that Villages' claims against Huntington relative to its ability to collect rents have some bearing on their obligations under the guaranties.

Defendants' arguments do not carry the day. As to a need for discovery, defendants have not stated what discovery is necessary in order to defend against enforcement of the guaranties. To the extent they argue that Fourteen does not have a valid interest based on the assignment, the record belies this assertion. Attached as Exhibit C to Fourteen's reply are all the assignment documents, including Huntington's assignment of the note and loan documents to Fourteen. The guaranties at issue are specifically listed as part of the loan documents subject to the assignment. Even if the guaranties were not so listed, under Michigan law an assignment of a promissory note

9

has the effect of also assigning a guaranty of that promissory note, even if there is no specific assignment of the guaranty. See Aiton v. Slater, 298 Mich. 469, 299 N.W. 149, 153–54 (1941) (finding guaranty agreement attached to bond was enforceable by the holder of the bond, and "it was immaterial that the guaranty was not assigned at the same time the notes were, as the assignee had the same rights to subject the securities to payment of the debts as the assignor had"). Thus, despite defendants' protestations to the contrary, the "chain of title" and Fourteen's right to enforce the guaranties is found in the record.

Regarding discovery as to damages, defendants' request is premature inasmuch as Fourteen has not moved for summary judgment on damages; rather, it has moved for summary judgment on liability.

As to the enforceability of the guaranties, defendants do not dispute that they signed the guaranties or that the loan at issue is in default. The language of the guaranties, some of which is noted above, leads to the conclusion that they are enforceable.

Defendants appear to suggest that Villages' claims against Huntington have some relevance to their obligations. They are mistaken. The guaranties states that they "absolutely and unconditionally guarantee[d] to [the lender] the full and prompt payment when due, whether at maturity or earlier . . of the debts, liabilities and obligations" arising under the loan. They also agreed that "[n]o act or thing need occur to establish the liability of [defendants] hereunder, and no act or thing, except full payment and discharged of all Indebtedness, shall in any way exonerate [defendants] or modify, educe, limit or release the liability of [defendants] hereunder." Defendants also

10

waived all defenses, including setoff and any defenses available to Villages. The waiver provision, states that defendants:

> waiv[ed] any all defenses, claims and discharges of [Villages] or any obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, [defendants] will not assert, plead or enforce against [Fidelity] any defense of waiver, release, statute of limitations, res judicata, statute of frauds, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to [Villages] or any other person liable in respect of any Indebtedness, or any setoff available against [Fidelity] to [Villages] or any such other person, whether or note on account of a related transaction.
>
> [Defendants] further agree[d] that the[y] shall be and remain obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including [Villages], has such obligation discharged in bankruptcy or otherwise discharged by law.

The clear import of this language is that the only available defense to enforcement is that full payment has been made. However, it is undisputed that the loan is in default. Therefore, this defense is not available.

Finally, defendants' attack on Wilk's declaration falls short. The declaration is admissible as he is a Vice President of both Huntington and Fourteen with knowledge of the loan documents. Wilk's declaration simply sets forth the foundation for the loan documents, which are themselves admissible as business records. See Fed. R. Evid. 803(6).

In short, defendants have not put forth any valid argument to defeat Fourteen's motion for summary judgment to enforce the guaranties.

## IV. Conclusion

For the reasons stated above, defendants' motion for abstention or stay of case is DENIED. Fourteen's motion for summary judgment is GRANTED.

SO ORDERED.

    S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  August 28, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, August 28, 2013, by electronic and/or ordinary mail.

    S/Sakne Chami
Case Manager, (313) 234-5160